## WILLIAM MORSE *vs.* CALVIN MARSHALL.

A deed of a water privilege, having a lower and an upper dam, "also all the land which I the said grantor own that said first mentioned dam flows, (reserving all the wood except what stands on said dam,) together with the right to flow all the land that said dam as it now stands will flow; also all the land which the second mentioned dam flows, (reserving the wood,) together with the right to flow all the land that said dam as it now stands will flow," conveys the land which the dam would flow if in use, although at the date of the deed the dam was not in use, and the water flowed within the banks of the stream and through the waste way, as freely as if no dam had been there.

TORT in the nature of trespass *quare clausum fregit.* At the trial in the superior court, before *Wilkinson,* J., the jury returned a verdict for the defendant, under directions so to do; and the plaintiff alleged exceptions. The case is stated in the opinion.

*E. Ames,* for the plaintiff.

*E. H. Bennett,* for the defendant.

GRAY, J. The plaintiff claims title under a deed made in 1833, by Calvin Marshall, (who then owned the premises and the adjoining land on both sides,) with the usual covenants of warranty, of a water privilege in Easton, having two dams, one about eight rods below the other: " Also all the land which I, the said Calvin Marshall, own that said first mentioned dam flows, (reserving all the wood except what stands on said dam,) together with the right to flow all the land that said dam as it now stands will flow; also all the land which the second mentioned dam flows, (reserving the wood,) together with the right to flow all the land that said dam as it now stands will flow, also the right to dig, make and use a watercourse immediately from the upper dam to the lower dam, to be finished four feet wide across my land." The plaintiff introduced evidence, which there was nothing to contradict, tending to show that when this deed was delivered no water was held or set back by either dam, but the brook flowed in its natural channel, which was three or four feet wide; and that a quantity of wood had grown up on the land formerly covered by the upper pond, and had been cut off by the defendant since making this deed. Wood has since grown up there again, and been cut by the defendant; and

this action is brought against him for trespassing on this land and cutting down the wood.

The only question presented to us by the bill of exceptions is whether this deed conveyed "the land covered by the water raised by the upper dam to the height at which the dam stood at the date of the deed," or only a right to flow that land. And it seems to us very clear that it conveyed the land as well as the right to flow. The reservation of the wood to the grantor shows that the land on which the wood stood was intended to be granted. If only the right to flow had been granted, no such reservation would have been necessary, for the wood would have remained, together with the fee of the land, in the grantor. The wood did not grow in the bed of the brook, but upon the land on each side, which had been flowed when the mill pond was full. The grant of "all the land which the dam flows" is to be measured by the land flowed by the dam when in use, not limited to the land over which the brook ran when the dam flowed no land at all. The additional grant of "the right to flow all the land that said dam as it now stands will flow" is not by this construction rendered inoperative; it still gives the right to flow to the utmost limit of that land, notwithstanding any incidental injury caused by the water to adjoining lands of the grantor. There is nothing inconsistent with this view in the further grant of the right to make a watercourse from the upper dam to the lower; for the shortest way from the one dam to the other is across land the title in which, upon any construction, remained in the grantor.                           *Exceptions sustained.*